762 S.E.2d 69

**The STATE, Respondent,**

**v.**

**Henry HAYGOOD, Appellant.**

**Appellate Case No. 2012–211961.**

**No. 5247.**

Court of Appeals of South Carolina.

Heard June 4, 2014.

Decided June 30, 2014.

Rehearing Denied Aug. 20, 2014.

---

Breen Richard Stevens, of Orangeburg, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General John Croom Colvin Hunter, both of Columbia, for Respondent.

HUFF, J.

Henry Haygood was convicted of criminal domestic violence (CDV) in magistrate's court. Upon appeal to the circuit court,

his conviction was affirmed. We reverse and remand for a new trial.

## FACTUAL/PROCEDURAL HISTORY

Haygood appeared before Magistrate Samuel A. Daily for a bench trial on the charge of CDV. The State presented Lieutenant Lacra Jenkins as its only witness, while Haygood presented no evidence at his trial. According to the magistrate's return,[1] Lt. Jenkins "testified as to what took place during his initial investigation, after he responded to an alleged CDV call" on March 31, 2008. The return indicates the lieutenant testified as follows:

Upon arrival he stated that the victim[,] Towanna Haygood[,] was very upset. During his investigation he stated that the alleged victim, Towanna Haygood[,] stated to him that her husband beg[a]n fighting her in the bedroom and he stated to her that he was going to kill her. Lt. Jenkins then testified that Mrs. Haygood stated that Mr. Haygood went to the bedroom closet and retrieved a brown in color shotgun and that her 14 [year-old] son struggle[d] with him to take the shotgun away from him. Mrs. Haygood then told him that Mr. Haygood reached in his pants pocket where he keeps a small handgun at times. She then grabbed his pants pocket causing some small bullets to fall to the floor. She stated to him that Mr. Haygood then went outside the resident but came back and punch[ed] a hole in the bedroom closet. Lt. Jenkins stated that when he arrived on the scene he observed Mr. Haygood being highly intoxicated. When he tried talking to him[,] he beg[a]n using profanity, stating that this was his house and that he would do anything he wishes. Lt. Jenkins further testified that Henry and Towanna Haygood were married at the time of the incident and ha[d] a child in common.

As to objections and rulings during the trial, the return indicates trial counsel objected to the State's "introduction of verbal statements made by the alleged victim to the investi-

1. The return indicates these proceedings were recorded electronically. However, Haygood's trial counsel informed the circuit court that when she requested a copy of the recording, she was told the recording was no longer available.

gating officer" that were "pertaining to allegations of what [Haygood] did on the date [in] question." It additionally notes the State took the position that the officer's duty, after being dispatched to an alleged CDV, "was to do an investigation of the incident and be prepared to testify as to the facts (during his investigation) at trial," and that the testimony in question qualified as an excited utterance. The magistrate overruled Haygood's objection, "agree[ing] with the State that in some criminal domestic violence [cases] the investigating officer of the alleged incident should be allowed to testify as to the finding of facts during his investigation." The magistrate found Hay good guilty of CDV and sentenced him to thirty days in jail or a fine of $2,130.00, suspended upon completion of a batterer's intervention program.

Haygood appealed his conviction to the circuit court on the ground that the introduction of the alleged verbal statements violated his Sixth Amendment right to confront witnesses against him pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), arguing the alleged victim was not unavailable for trial and the defense had no opportunity to cross examine the victim such that it was error to admit the testimonial statements. In argument before the circuit court, trial counsel noted she had objected on the basis of *Crawford* to the State's attempt to introduce oral statements given by the victim though the officer. Counsel further recounted for the circuit court that the State had argued the information in the oral statement by the victim was an excited utterance and she again had objected to admission of the evidence before the magistrate based on *Crawford,* noting hearsay was not the issue. Trial counsel reiterated to the circuit court that the magistrate ruled the testimony of the officer was admissible as an excited utterance, but that was not her objection. Rather, her argument was based on *Crawford,* as the officer was eliciting testimony on statements made by the alleged victim and the alleged victim was not present for her to have an opportunity to cross-examine. Counsel asserted that, pursuant to *Crawford,* the State had the burden of proving a victim was unavailable and that the defendant had a previous opportunity to cross-examine the witness.

The solicitor agreed that this case turned on whether or not the statements were "testimony." However, he maintained

the State disagreed that *Crawford* provided that excited utterances no longer qualified as exceptions to the rule against hearsay. He argued the magistrate decided the issue "based on whether or not the testimony the officer was giving was that of the testimony of variety," and the magistrate used the correct application of law in deeming it to be an excited utterance exception to hearsay and "not testimony." The solicitor further distinguished the matter at hand from *Crawford* on the basis that *Crawford* involved a recorded statement made during a police interrogation, whereas the statement in the case at hand was made to an officer arriving at the scene and was nontestimonial and qualified as an excited utterance. The solicitor argued, in this case, the magistrate heard testimony that the officer arrived shortly after the incident,[2] weapons were involved, and the victim's child was involved, showing the victim was in an excited state. Thus, the solicitor maintained, "because the statement was taken immediately after the start of the event while [the declarant] was still under stress from the start of the event," the testimony met every element of an excited utterance.

The circuit court took the matter under advisement and thereafter issued an order denying Haygood's appeal. In its decision, the circuit court noted Haygood's appeal was based on the magistrate's admission of a statement by the victim which was testified to by the responding officer. The court then stated, "[Haygood] claims that this statement should be excluded based on the fact that it is hearsay." After evaluating the statement under Rule 803(2), SCRE, the circuit court found the statement qualified as an excited utterance and found it admissible as an exception to the rule against hearsay. The circuit court additionally found the matter at hand distinguishable from *Crawford* on the basis that case dealt with a recorded statement taken in a custodial interrogation. Further, it determined the United States Supreme Court (USSC) deemed the statement in *Crawford* inadmissible, not because it fell within the excited utterance hearsay exception, but because it bore a particularized guarantee of trustworthiness. The circuit court then concluded the statements testified to by Lt. Jenkins were admissible under the excited utterance ex-

---

**2.** Our review reveals no evidence in the record concerning how soon after the incident occurred the officer arrived.

ception and, because the statements fell within a long established exception to the rule against hearsay, their admission did not violate the Confrontation Clause. This appeal follows.

## ISSUE

Whether Haygood's Sixth Amendment right to confrontation was violated by the admission of testimonial hearsay under the excited utterance exception without an opportunity of cross-examination by the defense.

## STANDARD OF REVIEW

"The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* at 429–30, 632 S.E.2d at 848.

## LAW/ANALYSIS

Haygood contends the circuit court violated his right to confrontation when it found testimonial hearsay admissible under the excited utterance exception to the rule against hearsay. Haygood first asserts the circuit court erred in finding the testimonial statements made by the alleged victim to the police did not violate the Confrontation Clause because the statements fell within the excited utterance exception to hearsay. He argues, under *Crawford*, the statements were testimonial in nature, and while the statements were arguably given in excited utterance, because they were testimonial in nature they required a Sixth Amendment confrontation by the defense. Haygood also argues the circuit court erred in distinguishing this case from *Crawford* on the bases that the statement in *Crawford* (1) was taken in a custodial interrogation and (2) was not an excited utterance. Lastly, in response to the State's assertion that the issue is not preserved for appellate review, Haygood contends trial counsel presented the arguments to both the magistrate and the circuit court, and both improperly conflated counsel's Sixth Amendment

argument with the excited utterance hearsay exception. Based upon the improper admission of the testimonial statements, Haygood requests this court reverse his conviction and remand the matter for a new trial. We find the issue is properly preserved for our review, and agree with Haygood that admission of the statements in question violated his constitutional right to confrontation, requiring reversal of his conviction.

## I. Preservation

"It is axiomatic that an issue cannot be raised for the first time on appeal." *State v. Cope*, 405 S.C. 317, 338–39, 748 S.E.2d 194, 205 (2013) (quoting *Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2012)). "For an issue to be properly preserved it has to be raised to and ruled on by the trial court." *State v. Jennings*, 394 S.C. 473, 481, 716 S.E.2d 91, 95 (2011). An argument advanced on appeal but not raised and ruled on below is not preserved. *State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005).

"Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide us with a platform for meaningful appellate review." *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) (quoting *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct.App.2006)). "[T]his is not a 'gotcha' game aimed at embarrassing attorneys or harming litigants, but rather is an adherence to settled principles that serve an important function." *Id.* at 329–30, 730 S.E.2d at 285. Though our appellate courts should follow longstanding precedent and resolve an issue on preservation grounds when it "clearly is unpreserved," it is "good practice for us to reach the merits of an issue when error preservation is doubtful." *Id.* at 330, 730 S.E.2d at 285.

Although the magistrate's return does not specifically mention *Crawford* or the Confrontation Clause, the return does indicate trial counsel objected to the State's "introduction of verbal statements made by the victim to the investigating officer" that "pertain[ed] to allegations of what [Haygood] did on the date [in] question." Additionally, the return indicates the magistrate overruled Haygood's objection, "agree[ing]

with the State that in some criminal domestic violence [cases] the investigating officer of the alleged incident should be allowed to testify as to the finding of facts during his investigation." Thus, a review of the return shows the issue of whether Haygood's Sixth Amendment right to confrontation was violated by the admission of testimonial hearsay under the excited utterance exception without an opportunity of cross-examination by the defense is not "clearly ... unpreserved." *Id.* Further, the colloquy between trial counsel, counsel for the State, and the circuit court judge during Haygood's appeal to the circuit court indicates this issue was in fact argued before the magistrate. Trial counsel explicitly stated to the circuit court that she informed the magistrate her objection was based on *Crawford.* The fact that trial counsel noted to the circuit court that the magistrate ruled the testimony was admissible as an excited utterance, in spite of the fact that hearsay was not her objection, is an indication that the magistrate believed the excited utterance exception to the hearsay rule was dispositive of trial counsel's *Crawford* argument. We do not agree, as the State propounds, that the argument before the circuit court shows Haygood conceded the magistrate never ruled on the *Crawford* objection. Rather, it simply indicates the magistrate overruled the *Crawford* objection, finding the excited utterance exception to be controlling. Additionally, the solicitor stated to the circuit court, "I agree that this case turns on what [trial counsel] spoke of, and that's specifically whether or not this [statement is] testimony. That's what *Crawford* speaks to." The solicitor also recounted for the circuit court that the magistrate "decided this issue of evidence based on whether or not the testimony the officer was giving was that of the testimony of variety," and the magistrate correctly determined the testimony was admissible as a hearsay exception, "an excited utterance, [and it was] not testimony." Further, the solicitor specifically argued the statement in question was "not a testimonial statement," but was instead an excited utterance, and again proclaimed "[t]his is not a testimonial statement." The solicitor then attempted to distinguish *Crawford.* Based on the record before us, we find the issue is preserved for our review.[3]

---

3. As previously noted, the trial proceedings were electronically recorded, but when trial counsel sought to obtain the recording in preparation

432

## II. Confrontation Clause Law

■ The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The constitutional right to confront and cross examine witnesses is essential to a fair trial in that it promotes reliability in criminal trials and insures that convictions will not result from testimony of individuals who cannot be challenged at trial." *State v. Martin*, 292 S.C. 437, 439, 357 S.E.2d 21, 22 (1987). An analysis of three seminal USSC cases leads us to the conclusion that the admission of the statements at hand violated Haygood's Sixth Amendment confrontation rights.

### A. *Crawford v. Washington*

In *Crawford*, Michael Crawford was convicted of assaulting a man who allegedly tried to rape Crawford's wife. *Id.* at 38, 41, 124 S.Ct. 1354. At trial, the State played for the jury the

___

for appeal, she was informed the recording was no longer available. Thus, we do not have the benefit of knowing what occurred at the trial level to determine exactly what arguments were made to the magistrate in regard to admission of this evidence and how the magistrate specifically ruled at that time. The State does not argue *Crawford*, and the Confrontation Clause was never raised to the magistrate, but only that such was never specifically ruled on by the magistrate. However, argument before the circuit court demonstrates the issue was raised to the magistrate, and the return indicates "[t]he court overruled [Haygood's] objections." We do not believe the defendant should be penalized by the loss of the recording and the vagueness of the magistrate's return on this point, especially in light of the fact that the appeal before the circuit court clearly indicates the matter was raised to the magistrate, and the State did not, on appeal to the circuit court, object based on error preservation. Additionally, though the State refers to section 18-7-80 of the South Carolina Code as granting the circuit court the authority to direct the magistrate to amend deficiencies in the return, and thus supporting its argument the matter is not preserved, this section simply allows the appellate court to direct a "further or amended return," should "the return be defective." S.C.Code Ann. § 18-7-80 (2014). There is nothing to indicate the circuit court or either of the parties believed the return was defective or that either party considered the issue not ruled upon by the magistrate or in any way unpreserved for review. Finally, the matter is clearly preserved as far having been raised to the circuit court acting as an intermediate appellate court. *Cf. State v. Oxner*, 391 S.C. 132, 134, 705 S.E.2d 51, 52 (2011) ("An argument that is not raised to an intermediate appellate court is not preserved for review by this Court.").

wife's tape-recorded statement to the police describing the stabbing, even though Crawford had no opportunity for cross-examination. *Id.* The State invoked the hearsay exception for statements against penal interest in its quest to admit the wife's statement. *Id.* at 40, 124 S.Ct. 1354. Previously, the law set forth in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), abrogated by *Crawford,* provided that the Confrontation Clause did not bar admission of an unavailable witness's statement against a criminal defendant if the statement bore "adequate 'indicia of reliability' "—a test that could be met by showing the evidence either (1) fell within a firmly rooted hearsay exception, or (2) bore particularized guarantees of trustworthiness. *Id.* at 40, 124 S.Ct. 1354. The trial court admitted the statement of Crawford's wife on the basis it bore particularized guarantees of trustworthiness. *Id.* The USSC reversed Crawford's conviction, finding the State admitted the wife's testimonial statement against Crawford despite the fact that he had no opportunity to cross-examine her, thereby violating Crawford's Sixth Amendment rights. *Id.* at 68, 124 S.Ct. 1354.

In revisiting *Roberts,* the USSC noted the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *Id.* at 51, 124 S.Ct. 1354. It then observed:

"Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.

*Id.* at 51, 124 S.Ct. 1354 (citation omitted). The USSC found "[a]dmitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation," and though the Confrontation Clause's ultimate goal is to ensure reliability of evidence, it commands that "reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61, 124 S.Ct. 1354. It determined "[t]he *Roberts* test allow[ed] a jury to hear evidence, untested by the

434

adversary process, based on a mere judicial determination of reliability," and it "replace[d] the constitutionally prescribed method of assessing reliability with a wholly foreign one." *Id.* at 62, 124 S.Ct. 1354. The USSC concluded "[t]he unpardonable vice of the *Roberts* test. . [was] not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* at 63, 124 S.Ct. 1354.

▮▮▮ Upon reconsideration of *Roberts*, the USSC held the Confrontation Clause bars admission of testimonial hearsay statements of a witness absent from trial unless: (1) the declarant is unavailable to testify at trial, and (2) the accused had a prior opportunity to cross-examine the declarant. 541 U.S. at 53–54, 58, 68, 124 S.Ct. 1354. Thus, even if a statement is admissible hearsay, the Confrontation Clause may operate to render the otherwise admissible hearsay evidence inadmissible if it is testimonial in nature. *See id.* at 68, 124 S.Ct. 1354 (holding testimonial evidence implicates the Sixth Amendment, which demands unavailability and a prior opportunity for cross-examination, but the admission of nontestimonial hearsay evidence remains the province of each state's development of hearsay law). Included within the "core class of 'testimonial' statements" by the court in *Crawford* are "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Id.* at 51–52, 124 S.Ct. 1354. "Statements taken by police officers in the course of interrogations" are considered testimonial. *Id.* at 52, 124 S.Ct. 1354; *See also id.* at 53, 124 S.Ct. 1354 ("[E]ven if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class."). The USSC characterized its use of the term "interrogation" as being used in its colloquial sense, "rather than in any technical legal, sense." *Id.* at 53 n. 4, 124 S.Ct. 1354. Though it declined, in *Crawford*, to "spell out a comprehensive definition of 'testimonial,' " it noted, at a minimum, it applied "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and *to police interrogations.*" *Id.* at 68, 124 S.Ct. 1354. (emphasis added).

## B. *Davis v. Washington* and *Hammon v. Indiana*

Following the 2004 *Crawford* opinion, in *Davis v. Washington* and *Hammon v. Indiana,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the USSC took steps to "determine more precisely" which statements made pursuant to police interrogation are testimonial in nature. *Id.* at 822, 126 S.Ct. 2266. Specifically, the court was tasked with determining whether statements made to law enforcement during a 911 call as well as statements made at a crime scene were "testimonial" and therefore subject to the Confrontation Clause. *Id.* at 817, 126 S.Ct. 2266. There, the court dealt with two different domestic disturbance cases: one involving a victim's identification of her abuser in response to initial questions from a 911 emergency operator *(Davis),* and the other involving oral statements made by a victim to police, as well as an affidavit written and signed by the victim, provided at the scene, wherein the victim gave an account of what had occurred between her and her husband (*Hammon* ). *Id.* at 817–18, 819–20, 126 S.Ct. 2266. In *Davis,* the relevant statements were made in a 911 call wherein the operator ascertained the victim was involved in a domestic situation with Davis, the victim relaying at the time of the call that Davis was jumping on her and using his fists. *Id.* at 817, 126 S.Ct. 2266. The police arrived within four minutes of the call and observed the victim in a shaken state with fresh injuries, frantically attempting to gather her belongings and her children so she could leave the residence. *Id.* at 818, 126 S.Ct. 2266. In *Hammon,* after police responded to a reported domestic disturbance, they found the victim alone on her front porch, appearing "somewhat frightened," but stating to officers "nothing was the matter." *Id.* at 819, 126 S.Ct. 2266. The victim's husband, who was in the kitchen, told the police he and his wife had been in an argument but "everything was fine now," and the argument between them had never become physical. *Id.* While one officer remained with the husband, another attempted to speak with the victim in the living room, again asking her what had occurred. *Id.* The husband made several attempts to participate in the victim's conversation with police, and the officer testified the husband became angry when he insisted the husband stay separated from the victim so the officer could investigate what had happened. *Id.* 819–20, 126 S.Ct. 2266. After hearing the

victim's account, the officer had her fill out and sign an affidavit, wherein the victim indicated her husband broke their furnace, shoved the victim onto the ground into broken glass, hit her in the chest, threw her down, broke lamps and a phone, tore up her van so she could not leave the house, and attacked the victim's daughter. *Id.* at 820, 126 S.Ct. 2266.

In approaching its analysis of the two situations, the USSC stated as follows:

Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822, 126 S.Ct. 2266. Additionally, the court noted, "even when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires [the courts] to evaluate." *Id.* at 822 n. 1, 126 S.Ct. 2266.

Applying this law to the facts of the two domestic violence cases, the USSC concluded the statements in *Davis* identifying the assailant in the course of the 911 call were nontestimonial, while the statements produced by the interrogation in *Hammon* were "inherently testimonial." *Id.* at 829, 830, 126 S.Ct. 2266.

Specifically, as to the 911 call in *Davis*, the USSC noted as follows:

When we said in *Crawford*, supra, at 53, 124 S.Ct. 1354, that "interrogations by law enforcement officers fall squarely within [the] class" of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the

perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial. It is, in the terms of the 1828 American dictionary quoted in Crawford, " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " 541 U.S., at 51, 124 S.Ct. 1354.... A 911 call, on the other hand, and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to "establis[h] or prov[e]" some past fact, but to describe current circumstances requiring police assistance.

*Id.* at 826–27, 126 S.Ct. 2266. The Supreme Court then discussed the differences between the call from the 911 victim in *Davis* and the interrogation of the wife in *Crawford,* noting as follows: (1) in *Davis,* the victim was speaking about events as they were actually occurring, rather than describing past events, while the wife's interrogation in *Crawford* took place hours after the events she described had occurred; (2) unlike the wife in *Crawford,* "any reasonable listener would recognize" that the victim making the 911 call in *Davis* was facing an ongoing emergency; (3) the nature of what was asked and answered in *Davis* was such that the elicited statements were necessary to be able to resolve the present emergency rather than simply to learn, as in *Crawford,* what had occurred in the past; and (4) there were distinct levels of formality between the two cases, with the wife in *Crawford* responding calmly at the station house to a series of questions with the officer-interrogator taping and making notes, while the victim in *Davis* provided frantic answers over the phone in an environment that was not tranquil or even safe. *Id.* at 827, 126 S.Ct. 2266. Against this backdrop, the USSC concluded the circumstances of interrogation in *Davis* "objectively indicate[d] its primary purpose was to enable police assistance to meet an ongoing emergency" and the caller in the 911 call was not acting as a witness, she was not testifying, and what she said was not "a weaker substitute for live testimony" at trial. *Id.* at 828, 126 S.Ct. 2266. Accordingly, her statements identifying Davis as her assailant were not testimonial. *Id.* at 829,

438

126 S.Ct. 2266.[4]

Applying the law to the facts in *Hammon,* however, led the USSC to conclude the statements in that case were testimonial in nature. *Id.* at 830, 126 S.Ct. 2266. It found "it [was] entirely clear from the circumstances that the interrogation [in *Hammon*] was part of an investigation into possibly criminal past conduct—as, indeed, the testifying officer expressly acknowledged." *Id.* at 829, 126 S.Ct. 2266. The USSC noted no emergency was in progress at the time the statements were made, when the officers first arrived the victim told them things were fine, and when the officer questioned the victim a second time eliciting the challenged statements, "he was not seeking to determine (as in *Davis*) 'what is happening,' but rather 'what happened.'" *Id.* at 829–30, 126 S.Ct. 2266. Viewed objectively, the primary purpose of the interrogation in *Hammon* was to investigate a possible crime. *Id.* at 830, 126 S.Ct. 2266. Additionally, the USSC noted, though the interrogation in *Crawford* was more formal, being tape-recorded at the station house following *Miranda*[5] warnings, the wife's interrogation in *Hammon* was nonetheless "formal enough" as it was conducted in a separate room, "away from her husband (who tried to intervene), with the officer receiving her replies for use in his 'investigation.'" *Id.* Comparing the circumstances in *Hammon* to those in *Crawford,* the USSC noted as follows: (1) both declarants were actively separated from the defendant; (2) both statements deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed; and (3) both took place some time after the events described were over. *Id.* Accordingly, the USSC held "[s]uch statements under official interrogation are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." *Id.* Notably, the court declined to hold "*no* questions at the scene

---

**4.** It should be noted the USSC also cautioned that a conversation which begins as an interrogation to determine the need for emergency assistance may at some point evolve into testimonial statements once the emergency assistance purpose has been achieved. *Id.* at 828, 126 S.Ct. 2266.

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

will yield nontestimonial answers," as officers called to investigate need to know whom they are dealing with so they might assess the situation, the threat to their safety, and any possible danger to a potential victim. *Id.* at 832, 126 S.Ct. 2266. Thus, such exigencies may result in initial inquiries which produce nontestimonial statements. *Id.* However, in cases such as *Hammon,* where the "statements were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation, the fact that they were given at an alleged crime scene and were 'initial inquiries' is immaterial." *Id.*

### C. *Michigan v. Bryant*

In 2011, the USSC issued another opinion addressing whether statements made to police after officers responded to an incident constituted testimonial evidence. In *Michigan v. Bryant,* 562 U.S. 344, ——, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011), the USSC further examined the primary-purpose test, expounding on the "ongoing emergency" discussed in *Davis. Id.* at 1156.

In *Bryant,* police officers responding to a radio dispatch found a man lying in a gas station parking lot, suffering from a gunshot wound to his abdomen. *Id.* at 1150. The victim subsequently died of his wounds; however, before he was removed from the scene, officers were able to speak with him for five to ten minutes, asking him, " 'what had happened, who had shot him, and where the shooting had occurred.' " *Id.* During that discussion, the victim was able to tell officers that Bryant had shot him and was able to relate when and where the shooting occurred. *Id.* At Bryant's trial, officers were allowed to repeat in court what the victim had told them about the incident. *Id.* Bryant argued the victim's statements to police were testimonial under *Crawford* and *Davis* and were therefore inadmissible, while the prosecution argued the statements were admissible as excited utterances under the Michigan Rules of Evidence. *Id.* at 1151. It was undisputed the victim was unavailable at trial and Bryant had not been afforded a prior opportunity to cross-examine him. *Id.* The Supreme Court of Michigan concluded that the circumstances clearly indicated that the "primary purpose" of the officers' questioning was to establish the facts of an event that had

already occurred, and was not to enable police assistance to meet an ongoing emergency. *Id.* It therefore held the admission of the victim's statements to police was reversible error. *Id.*

The USSC disagreed, holding that the circumstances of the interaction between the victim and the police objectively indicated that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency and, accordingly, the victim's identification and description of the shooter and the location of the shooting were not testimonial statements, such that their admission at trial did not violate Bryant's Confrontation Clause rights. *Id.* at 1150. In further analyzing which police interrogations produce testimony, thereby implicating a Confrontation Clause bar, the court first noted that not all those questioned by police are witnesses and not all interrogations by them are subject to the Confrontation Clause. *Id.* at 1153. It also noted "the most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Id.* at 1155. Additionally, the court observed there may be circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony, and "[i]n making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant." *Id.* "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.*

The USSC clarified an objective evaluation is the proper means to determine the matter stating, "To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' ... which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Id.* at 1156 (citation omitted). The court emphasized that the relevant inquiry is not the subjective or actual purpose of the individuals, but "the purpose that reasonable participants

would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.* Among the most important circumstances to consider in determining the primary purpose of the interrogation is whether there exists an ongoing emergency at the time of the encounter between the declarant and the police.[6] *Id.* at 1157. "[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Id.* at 1158.

The USSC also recognized that domestic violence cases have a narrower zone of potential victims than those situations involving threats to public safety, and because *Davis* and *Hammon* were domestic violence cases, the court "focused only on the threat to the victims and assessed the ongoing emergency from the perspective of whether there was a continuing threat to them." *Id.* However, it concluded "[a]n assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.* Noting "the duration and scope of an emergency may depend in part on the type of weapon employed," the court distinguished *Davis* and *Hammon* on the basis that those cases involved the use of fists by the assailant, while the emergency in *Bryant* involved the use of a gun. *Id.* However, it further noted, had Hammon been reported to be "armed with a gun," separation of him from the victim by a single household wall might not have been sufficient to end the emergency. *Id.* at 1159.

Additionally, the USSC again recognized that there are limitations as to whether an emergency is ongoing, noting

---

6. Such is relevant because an emergency focuses the participants on something other than an attempt to prove past events which may be potentially relevant to later criminal prosecution. *Id.* "[B]ecause the prospect of fabrication in statements given for the primary purpose of resolving that emergency is presumably significantly diminished, the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination." *Id.* The court likened this logic to that justifying the excited utterance exception in hearsay law, noting excited utterances "are considered reliable because the declarant, in the excitement, presumably cannot form a falsehood," and an ongoing emergency has a similar effect of focusing attention on response to the emergency. *Id.*

a conversation which may begin as interrogation to determine the need for emergency assistance may evolve into testimonial statements, which portions should be excluded from evidence. *Id.*

This evolution may occur if, for example, a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency or that what appeared to be a public threat is actually a private dispute. It could also occur if a perpetrator is disarmed, surrenders, is apprehended, or, as in *Davis,* flees with little prospect of posing a threat to the public.

*Id.*

▉ The USSC also made clear that whether or not an ongoing emergency exists is not dispositive of the testimonial inquiry, but is simply a factor to be considered, albeit an important one. *Id.* at 1160. Another factor to consider is the informality of the encounter between a victim and police. *Id.* Observing that the questioning in *Bryant* "occurred in an exposed, public area, prior to the arrival of emergency medical services, and in a disorganized fashion," the court determined those facts made *Bryant* distinguishable from the formal station-house interrogation in *Crawford.* *Id.*

Next the court observed, beyond the circumstances in which the encounter occurs, "the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." *Id.* The court emphasized that a combined inquiry that accounts for the actions and statements of both the declarant and the interrogator is required, with the primary purpose of the interrogation often being most accurately determined by looking at the contents of the questions and the answers. *Id.* at 1160–61.

The court ultimately summarized as follows:

As we suggested in *Davis,* when a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the "primary purpose of the interrogation" by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs. The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circum-

stances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation. As the context of this case brings into sharp relief, the existence and duration of an emergency depend on the type and scope of danger posed to the victim, the police, and the public.

*Id.* at 1162 (footnote omitted).

Applying this analysis to the facts in *Bryant*, the USSC concluded "the circumstances of the encounter as well as the statements and actions of [the declarant] and the police objectively indicate[d] that the 'primary purpose of the interrogation' was 'to enable police assistance to meet an ongoing emergency,' " such that the victim's identification and description of his assailant and the location of the shooting were not testimonial hearsay and were not barred by the Confrontation Clause. *Id.* at 1166–67. In so finding, the court noted as follows:

As to the circumstances in which the encounter occurred, the court found the potential scope of the dispute, and therefore the emergency, in *Bryant* stretched more broadly than that in the domestic disturbance cases of *Davis* and *Hammon*, encompassing a potential threat to the police and the public. *Id.* at 1163–64. Additionally, *Bryant* involved the use of a gun, and while physical separation was sufficient to end the threat in *Hammon*, it did not necessarily end the threat in *Bryant*. *Id.* at 1164. Importantly, the court reiterated that "the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.' " *Id.* at 1165 (quoting *Davis*, 547 U.S. at 822, 126 S.Ct. 2266).

Reviewing the statements and actions of the declarant the court noted, from the description of the victim's condition and report of his statements, it could not say that the primary purpose of a person in such a situation would be to establish or prove past events potentially relevant to later criminal prosecution. *Id.* As to the officers' statements and actions, the court observed the questions they asked—what happened,

who had shot him, and where the shooting had occurred—were of the type necessary to allow the officers to access the situation, the threat to their safety, and the possible danger to the victim as well as the public. *Id.* at 1166. "In other words, they solicited the information necessary to enable them 'to meet an ongoing emergency.' " *Id.*

Finally, in considering the informality of the situation and the interrogation, the USSC found the situation in *Bryant* to be more similar to the "harried 911 call in *Davis* than the structured, station-house interview in *Crawford*," with "[t]he informality suggest[ing] that the interrogators' primary purpose was simply to address what they perceived to be an ongoing emergency, and the circumstances lack[ing] any formality that would have alerted [the declarant] to or focused him on the possible future prosecutorial use of his statements." *Id.*

Based upon this analysis, the USSC held the circumstances of the encounter and statements and actions of the declarant and interrogators in *Bryant* objectively indicated the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency. *Id.* at 1166–67. Accordingly, the declarant's statements were nontestimonial and therefore were not barred by the Confrontation Clause. *Id.* at 1167.

### III. Application of Law to the Facts

As a threshold matter we agree with Haygood that the circuit court erred in finding the testimonial statements made by the victim to the police did not violate the Confrontation Clause because the statements fell within the excited utterance exception to hearsay. Though the circuit court stated in its order that Haygood "claim[ed] that this statement should be excluded based on the fact that it is hearsay," the record is clear that trial counsel twice argued to the circuit court that hearsay was not the issue the defense was raising, but it was arguing inadmissibility based on *Crawford*. Further, *Crawford* plainly provides that a statement which may qualify as admissible hearsay may otherwise be rendered inadmissible by the Confrontation Clause if it is testimonial in nature. *See Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. ("Where nontestimonial hearsay is at issue, it is wholly

consistent with the Framers' design to afford the States flexibility in their development of hearsay law.... Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."); *id.* at 56 n. 7, 124 S.Ct. 1354 ("Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances."). Additionally, *Hammon* illustrates although a statement may be considered admissible as an excited utterance exception to the rule against hearsay, that exception will not save it from inadmissibility if otherwise barred by the Confrontation Clause. *See Hammon,* 547 U.S. at 820, 821, 126 S.Ct. 2266 ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). Indeed, while the State appears to have taken the position before the circuit court that the statements in this matter did not offend the Confrontation Clause because they qualified as excited utterances, it does not continue to take this stance on appeal.[7] Rather, it recognizes the paramount question is whether the statements made by the victim were testimonial, and maintains only testimonial statements require compliance with the Confrontation Clause while nontestimonial statements are generally admissible, subject to traditional limitations on hearsay evidence. Though a statement's qualification as an excited utterance is relevant in making the primary purpose determination, it is but a consideration. *See Bryant,* 131 S.Ct. at 1155 ("In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant."). Thus, if the statements in question are in fact testimonial, they were erroneously found to be admissible by

---

7. The State conceded at oral argument that, even if the statements qualified as excited utterances, they would be inadmissible if found to be testimonial in nature.

the circuit court based simply on a finding they qualified as an excited utterance exception to the rule against hearsay.

As well, we agree with Haygood that the circuit court erred in distinguishing this case from *Crawford* on the bases that the statement in *Crawford* (1) was taken in a custodial interrogation and (2) was not an excited utterance. First, the fact that the statements here were not taken at a police station during custodial interrogation, although a proper factor to consider, is not dispositive. *See Davis*, 547 U.S. at 827, 126 S.Ct. 2266 (considering the difference in the level of formality between the interview in the station house in *Crawford* and the frantic 911 call in *Davis* as one of the factors in determining whether the statements from the 911 call were testimonial); *Hammon*, 547 U.S. at 830, 126 S.Ct. 2266 (recognizing the *Crawford* interrogation was more formal, but determining the interrogation of Hammon's wife was "formal enough" in considering that factor and determining the wife's statements were testimonial); *Bryant*, 131 S.Ct. at 1166–67 (considering the informality of the situation and the interrogation as one of the factors in objectively evaluating the statements and actions of the parties to determine the primary purpose of the interrogation in deciding whether the Confrontation Clause bars admission of a statement). *Davis, Hammon*, and *Bryant* demonstrate *Crawford* may apply to prohibit statements regardless of whether statements are made to police in a custodial interrogation or outside of such confines. Second, absolutely nothing in *Crawford* limits its application to statements previously admitted based upon them bearing a particularized guarantee of trustworthiness. Indeed, the language in *Crawford* indicates that consideration of whether the Confrontation Clause is implicated does not evaporate simply because testimony happens to "fall within some broad, modern hearsay exception." *Crawford*, 541 U.S. at 56, 124 S.Ct. 1354. Further, the *Hammon* case establishes the decision in *Crawford* expressly applies to the sort of statements made here, i.e., those found admissible based upon the excited utterance exception. Thus, the USSC did not seek to limit the provision of the Confrontation Clause by challenging only statements that bore a particularized guarantee of trustworthiness. Accordingly, we agree with Haygood that the circuit court erred in distinguishing this case from *Crawford* on the bases that the

statement in *Crawford* was taken in a custodial interrogation and it did not involve an excited utterance. While such circumstances may be appropriate to consider in making an objective determination of the primary purpose of an interrogation in order to determine whether a statement is testimonial or nontestimonial, they are not dispositive of the is

Turning to the ultimate issue before us—whether the victim's statements are testimonial or nontestimonial—we note analysis of the case at hand is hampered by the fact that, not only do we not have available the specific questions and answers between the victim and Lt. Jenkins, we have only a summary of testimony from Lt. Jenkins as to what the victim said to him and little other information of the circumstances under which the statements were made. As noted by the State, the limited record before us makes it difficult to ascertain the circumstances surrounding the encounter between the victim and the officer. However, upon considering the restricted scenario before us,[8] we find it sufficiently demonstrates the statements made by the victim were testimonial, and because there is no evidence the victim was unavailable and no evidence Haygood ever had the opportunity to cross-examine the victim, the admission of the statements violated Haygood's Sixth Amendment confrontation rights.

 Summarizing the law, statements are "testimonial when the circumstances objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," while they are considered nontestimonial "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis* and *Hammon*, 547 U.S. at 822, 126 S.Ct. 2266. Further, *Bryant* edifies that "[t]o determine whether the 'primary purpose' of an interroga-

---

8. *See Bryant*, 131 S.Ct. at 1162–63 (noting the court was hampered in applying analysis to the facts of that case because (1) it did not have the luxury of reviewing a transcript of the conversation between police and the victim and (2) the pre-*Crawford* and *Davis* trial provided a record that had not been developed to ascertain the primary purpose of the interrogation, but nonetheless making the determination of its nontestimonial nature based upon the record before it).

tion is to enable police assistance to meet an ongoing emergency, which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." 131 S.Ct. at 1156 (citation omitted). The relevant inquiry is not the subjective or actual purpose of the individuals, but "the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.* Among the most important circumstances to consider in determining the primary purpose of the interrogation is whether there exists an ongoing emergency at the time of the encounter between the declarant and the police, and whether or not such an emergency exists and is ongoing "is a highly context-dependent inquiry." *Id.* at 1157, 1158. There are limitations as to whether an emergency is ongoing, as a conversation which may begin as interrogation to determine the need for emergency assistance may evolve into testimonial statements. *Id.* at 1159. Further, whether or not an ongoing emergency exists, although an important factor, is simply one factor to be considered in determining the primary purpose of an interrogation and is not dispositive of the testimonial inquiry. *Id.* at 1160. "[T]he existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, **the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.'** " *Id.* at 1165 (emphasis added) (quoting *Davis,* 547 U.S. at 822, 126 S.Ct. 2266).

 Objectively evaluating the circumstances in which the encounter occurred between the victim and Lt. Jenkins and the statements and actions of the victim and Lt. Jenkins, we find the primary purpose of the interrogation was not to enable Lt. Jenkins's assistance in order to meet an ongoing emergency but, rather, was to prove past events potentially relevant to later criminal prosecution.

Unlike *Davis,* the case at hand does not involve a 911 call, which is traditionally designed, not to prove or establish some fact from the past, "but to describe current circumstances requiring police assistance." *Davis,* 547 U.S. at 827, 126 S.Ct. 2266. We cannot say, as the USSC did in *Davis,* that any reasonable listener would recognize from the statements made

by the victim at hand that she was facing an ongoing emergency or that the her statements were a plea for help "against a bona fide physical threat." *Id.* Though the restricted record before us does not give us the benefit of knowing specifically what questions were asked by Lt. Jenkins and what the victim answered, the testimony of Lt. Jenkins does not demonstrate, as it did in *Davis,* that the elicited answers of the victim were necessary to resolve a present emergency. Rather, the nature of the statements tend to indicate the information was elicited in order for Lt. Jenkins "simply to learn (as in *Crawford*) what had happened in the past." *Id.* Additionally, while we agree with the State that, based upon the imperfect record, it is difficult to ascertain the level of formality involved between Lt. Jenkins and the victim, there is nothing to suggest the victim here was frantic in speaking with Lt. Jenkins or that the environment was unsafe at the time the victim made her statements, as was the case in *Davis. Id.*

Though, as the State observes, Lt. Jenkins testified the victim was visibly upset when he arrived at the scene, there is simply no indication she remained in that state when she made the statements in question or that her statements were a cry for help. Notably, the victim in *Hammon* was characterized as "somewhat frightened" upon the arrival of the police, yet the USSC ultimately found her statements to be testimonial. *Hammon,* 547 U.S. at 819, 126 S.Ct. 2266. The State also places much emphasis on the fact that Lt. Jenkins testified Haygood was highly intoxicated when he arrived on the scene, was hostile toward the officer, and told the officer "this was his house and that he would do anything he wishes." It is not clear at what point these matters occurred in relation to the victim's interview by the officer and under what circumstances, thus it is difficult to say whether these matters lend support to the State's assertion that they indicated the domestic disturbance was ongoing. At any rate, we note the facts in *Hammon* likewise demonstrated some hostile and belligerent behavior by the husband when he attempted to participate in the victim's conversation with the police and became angry after he was rebuffed and separated from the victim. *Id.* at 819–20, 126 S.Ct. 2266.

Further, we do not believe *Bryant* requires a finding that the statements in the case at hand were nontestimonial.

First, unlike *Bryant*, this matter involved a domestic dispute, which the USSC in *Bryant* recognized is typically more limited in the scope of the emergency in terms of the threat to individuals other than the initial victim. *Bryant*, 131 S.Ct. at 1158, 1163. The State, however, points to the fact that a gun was involved in this situation, asserting the scope of the emergency was heightened because the police found a gun in Haygood's possession. While *Bryant* recognized the involvement of a gun may create a continuing threat even in a domestic situation, as separation of the parties in a domestic matter by a single household wall might not be sufficient to end the emergency, *id.* at 1158–59, 1164, there is nothing in the record before us to indicate Haygood was actually armed with a gun at the time the police arrived, much less that he was in possession of such while the victim was giving her statement. Indeed, the record shows only that, while Haygood retrieved a shotgun during the dispute with the victim, the teenage son struggled with him to take the shotgun away, and though the victim knew Haygood kept a small handgun in his pocket "at times," when he reached in his pocket the victim grabbed the pocket causing small bullets, not a gun, to fall to the floor. At that point, Haygood went outside and then returned to punch a hole in the closet. Thus, there is no evidence, as the State suggests, that Haygood was armed with a gun at the time the police arrived at the residence such that any emergency had not yet ended. Indeed, under the evidence of record, while Haygood may have attempted to arm himself with a shotgun, the teenage son struggled with him to take the shotgun away during the incident. Simply put, there is nothing in the narrative to indicate there was any perceived danger from Haygood at the time the victim's statements were made to Lt. Jenkins. From the report of the victim's statements in this case, we cannot say that a person in her situation would have had a primary purpose of anything other than "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Id.* at 1165.

Additionally, though certainly not as formal as the station-house interview in *Crawford*, neither did the matter at hand involve a "harried 911 call" as in *Davis*, or the "fluid," and "somewhat confused," situation with the "[un]structured interrogation" that occurred in *Bryant*. *Id.* at 1166. Rather,

based upon the circumstances in this case, it appears, like the situation in *Hammon*, the interrogation was "formal enough." *Hammon*, 547 U.S. at 830, 126 S.Ct. 2266. Though it is not clear whether or not the victim here was actively separated from Haygood as she spoke to Lt. Jenkins about the matter, there is nothing to indicate she or anyone else was in any danger. Rather, it appears from the context of the situation that the victim "deliberately recounted" for the officer "how potentially criminal past events began and progressed." *Id.*

Finally, the State correctly notes that the USSC in *Bryant* likened the underlying rationale for considering the existence *vel non* of an ongoing emergency as one of the most important factors in determining the primary purpose of an interrogation as being similar to that justifying the excited utterance exception to the rule against hearsay. *Bryant*, 131 S.Ct. at 1157. From this, the State extrapolates that the magistrate's determination that the victim's statements were admissible under the excited utterance exception "illustrates the freshness of the domestic disturbance." First, as previously noted, the fact that a statement may qualify as an excited utterance will not necessarily save it from exclusion under the Confrontation Clause. Further, there is absolutely no indication in the record that the police arrived and took the victim's statement very shortly after the domestic incident occurred. Thus, while the victim may have still been "under the stress of excitement caused by the event or condition," [9] this does not necessarily indicate that the incident occurred immediately prior to the officer's arrival or that an emergency was ongoing at that point. Finally, even assuming *arguendo* that its qualification as an excited utterance is an indication of how "fresh" the statement is, the relationship in time between the domestic incident and the statement is certainly but one of the considerations in determining the context in which the victim made her statements to the police.

We find the case at hand is more similar to that of *Hammon*, wherein the interrogation occurred after police responded to the scene following a domestic disturbance. Most

---

9. *See* Rule 803(2), SCRE (providing an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition").

tellingly, we note the magistrate's return reflects that Lt. Jenkins "testified as to what took place during his initial *investigation* after he responded to an alleged CDV call," and that *"during his investigation"* the victim made the statements relating "what [Haygood] did on the date [in] question." Additionally, the return acknowledges it was the State's position that it was the officer's duty, upon being dispatched to the alleged CDV incident, "to *do an investigation* of the incident and be prepared to *testify as to the facts (during his investigation)* at trial," and that the magistrate agreed with the State that in some CDV cases, the "investigating officer . . . should be allowed to testify as to the *finding of facts during his investigation.*" Thus the return indicates the statements from the victim were elicited as a result of Lt. Jenkins' investigation of the matter. Contrarily, there is nothing in the return to specifically indicate any of the statements were made in order to enable Lt. Jenkins to respond to or resolve a present emergency or threatening situation. The State cites to notations in the return's summary of testimony indicating Haygood was belligerent and intoxicated, and the victim was highly upset; however, these matters do not necessarily evince an ongoing emergency and the summary does not relate any such emergency. Further, though the State also maintains the return shows Haygood had been armed with one, and possibly two, guns, it does not indicate Haygood was still in possession of a weapon at the time the police arrived or that Lt. Jenkins had to disarm him. Moreover, the summary of Lt. Jenkins' testimony as to the victim's statements is a recitation of how Haygood's potentially past criminal behavior began and progressed, thus acting as a substitute for live testimony of the victim. Though the State asserts the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency, its characterization of it as such simply does not make it so. *See id.* at 832 n. 6, 126 S.Ct. 2266 ("While prosecutors may hope that inculpatory "nontestimonial" evidence is gathered, this is essentially beyond police control. Their saying that an emergency exists cannot make it be so. The Confrontation Clause in no way governs police conduct, because it is the trial use of, not the investigatory collection of, ex parte testimonial statements which offends that provision. But neither can police conduct

govern the Confrontation Clause; testimonial statements are what they are."). We find the primary purpose of the interrogation—resulting in the victim's statements—was to investigate a possible crime. *See id.* at 829, 126 S.Ct. 2266 ("It is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct—as, indeed, the testifying officer expressly acknowledged.").

Accordingly, after review of the record before us, we conclude an objective evaluation of the circumstances in which the encounter occurred as well as the statements and actions of the parties indicates the primary purpose of the interrogation was not to enable police assistance to meet an ongoing emergency. Rather, the primary purpose of the interrogation was to investigate a possible crime, and the victim's statements to Lt. Jenkins are "an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination." *Id.* at 830, 126 S.Ct. 2266. We therefore hold the victim's statements in this matter were testimonial, and because there is nothing to indicate the declarant was not unavailable to testify at trial and the accused did not have a prior opportunity to cross-examine the declarant, admission of the statements violated Haygood's Sixth Amendment right to confrontation.

## CONCLUSION

Based on the foregoing, we reverse Haygood's conviction and remand for a new trial consistent with this court's opinion. We recognize the difficulties the State often encounters in prosecuting CDV cases. As noted by the USSC in *Davis* and *Hammon,* domestic abuse crimes are "notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial," and when this occurs, the offender reaps a windfall from the Confrontation Clause. 547 U.S. at 832–33. Nonetheless, our courts "may not ... vitiate constitutional guarantees" because they may "have the effect of allowing the guilty to go free." *Id.* at 833, 126 S.Ct. 2266. Therefore, we are constrained to reverse Haygood's conviction

based on the erroneous admission of the inherently testimonial statements of his wife to the officer.

**REVERSED AND REMANDED.**

PIEPER, J., concurs in result only.

THOMAS, J.

I concur in the result reached in the majority opinion to reverse Haygood's conviction and remand for a new trial. I would reverse and remand exclusively on the grounds that the court erred in distinguishing this case from *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and subsequently failing to make a determination as to whether the victim's statements were testimonial or nontestimonial. While I am aware that an appellate court may engage in a *Crawford* analysis [1], I do not believe this court can perform such an analysis here given the summary of the testimony [2] and the lack of findings by the magistrate and the circuit court as to this issue. *See State v. Ladson*, 373 S.C. 320, 327–28, 644 S.E.2d 271, 275 (Ct.App.2007) (reversing and remanding for a new trial where the record "lack[ed] the completeness and reliability necessary for this court to engage in meaningful appellate review").

---

[1]. *See State v. Ladner*, 373 S.C. 103, 114–15, 644 S.E.2d 684, 689–90 (2007) (finding a statement nontestimonial under *Crawford*).

[2]. The proceedings in magistrate's court were electronically recorded pursuant to section 22–3–790 of the South Carolina Code (Supp.2013). However, Haygood's trial counsel informed the circuit court that upon requesting a copy of the recording, she was told the recording was no longer available. Therefore, the only testimony from the trial in magistrate's court that we have before us is the magistrate's summary of the proceedings.